14812

CHITWOOD v. McMILLAN

(1 S. E. (2d), 162)

*Mr. E. J. Best,* for appellant.

*Messrs. John M. Daniel, Attorney General, J. Ivey Humphrey* and *M. J. Hough, Assistant Attorneys General, D.*

*W. Robinson* and *W. R. Symmes,* for respondent,

February 1, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The cause of action alleged is respondent's tortious and malicious interference with the contractual relations of the appellant with William F. Bowe, Jr., a road contractor. The appellant suffered a nonsuit and he appeals.

It appears that some time in August, 1936, a contract was awarded to William F. Bowe, Jr., by the South Carolina State Highway Department for certain road construction work in Kershaw County. This contract provided among other things for the removal of buildings and structures from the right of way; and Bowe entered into a written agreement with A. B. Chitwood & Son, a firm composed of A. B. Chitwood and his son, M. B. Chitwood, as subcontractors, to do this work.

A. B. Chitwood & Son were arranging to undertake the performance of their contract when the following letter was received from Mr. Bowe:

"Sept. 2, 1936

"Mr. A. B. Chitwood, Columbia, S. C.

"Dear Sir: I am enclosing copy of letter from Mr. C. R. McMillan, Central Division Engineer, which is self-explanatory.

"It appears that it will be necessary to enter into a new contract before any work is started on this project, and I would like to see your son about this at the earliest possible time."

The letter which was enclosed from Mr. McMillan reads as follows:

"Columbia, S. C.
"September 2, 1936

"F. A. Project 459-A Section 1 & 2 and 459-B. Kershaw County.

"Mr. Wm. Bowe, Jr., 540 Reynolds St., Augusta, Ga.

"Dear Sir: I have your letter of August 29th in which you state that you have entered into a contract with A. B. Chitwood & Son of Columbia for moving structures on the above mentioned project. It will not be satisfactory for Mr. A. B. Chitwood to be connected with this project in any capacity. It will, however, be satisfactory for Mr. Chitwood's son to carry on the house moving work. However, I know nothing of his ability as a house mover and I shall look to you to see that his work is carried on properly."

The appellant charges that the respondent was actuated by personal malice towards him in writing this letter and that it constituted a malicious and unlawful interference with his contractual relations with Bowe.

The respondent is one of the engineers of the highway department and had supervision over the construction work in Kershaw County described in the contract between Wm. F. Bowe, Jr., and the South Carolina State Highway Department. By his answer he denied generally the allegations of the complaint, and as a further defense alleged that if there was such a contract with Bowe, the latter had no authority to enter into the same with the appellant without first complying with the requirements set forth in his contract with the department.

The contract between the highway department and Bowe contained the standard provision that the contract "shall not be sublet, assigned, or otherwise disposed of, either in

whole or in part, except with the written consent of the Chief Highway Commissioner." It further provided that before such consent should be requested, the contractor "shall submit evidence that the party to whom it is proposed to make assignment is competent and responsible, together with a statement from the surety company concerned showing that the contract bond is authorized to cover all operations and obligations of the proposed assignee."

The lower Court, *inter alia*, upheld the contention of the respondent. One of the grounds upon which the nonsuit was granted was that the subletting was never consented to by the department and hence there was no valid existing contract with which the respondent could have interfered subjecting him to liability.

The appellant testified that he was familiar with the specifications of the highway department incorporated in its contract with Bowe which required the consent of the department in writing before a subletting of the contract could be effected or a sub-contractor be employed. Knowing this, he offered no testimony either that the Chief Highway Commissioner had approved the sub-contract in writing or that Bowe had submitted satisfactory evidence of the competency and responsibility of A. B. Chitwood & Son, or that Bowe had filed a statement from his surety extending the bond coverage to A. B. Chitwood & Son. Nor did he offer to prove that these things would have been done but for the interference of the respondent.

An examination of the authorities shows that the first recognition of a distinct cause of action for the interference by a third person with a contractual relationship arose in those cases where a third person interfered with the relation of master and servant. The recognition of a cause of action in such cases finally led to decisions wherein it was held that the right of action for maliciously procuring a breach of contract is not confined to cases where the relation between the parties is that of master and servant, or to cases of contracts for personal services, but ex-

tends to other contracts as well. *Angle v. Chicago, etc., R. Company,* 151 U. S., 1, 14 S. Ct., 240, 38 L. Ed., 55, 12 C. J., 604, Section 161; *Raymond v. Yarrington,* 96 Tex., 443, 72 S. W., 580, 73 S. W., 800, 62 L. R. A., 962, 97 Am. St. Rep., 914.

The theory of this doctrine is that the parties to a contract have a property right therein, which a third person has no more right maliciously to deprive them of, or injure them in, than he would have to injure their property. Such an injury, without sufficient justification, amounts to a tort for which the injured party may seek compensation by an action in tort for damages.

This doctrine had its genesis in the early English case of *Lumley v. Gye,* 1853, 2 El. & Bl., 216, 118 Eng. Rep., 749. This case established the principle that malicious interference by a third person inducing the breach of a contract for personal services is actionable. The principle, however, was soon expanded to include contracts of all types, so that today it is almost universally conceded to apply generally, with no restrictions, based on the nature of the contract. Much has been written upon the subject and the Courts have been called upon to apply the rule in a wide variety of cases, many of which are collected in *Sorenson v. Chevrolet Motor Co.,* 171 Minn., 260, 214 N. W., 754, 84 A. L. R., 43. And see, for an interesting discussion of the general subject, 3 Elliott, Contracts, Section 2685 *et seq.;* Carpenter, "Interference with Contractual Relations," 41 Harv. L. Rev., 728; 37 Mich. L. Rev., 115.

Before any question of liability for procuring a breach of contract arises, certain necessary factors and elements must appear—the first of which is the existence of a valid contract.

It was incumbent upon the appellant, before he could recover in this action, to show that the contract entered into between Bowe and A. B. Chitwood & Son, a partnership, was a valid and existing one, and this, in our opinion, he has failed to do because, admittedly, the validity

of such a contract, or subletting, was conditioned and dependent upon the consent in writing of the Chief Highway Commissioner. It is conceded that this consent was never asked for nor given, nor were any of the prerequisites necessary for such consent furnished.

The appellant contends that the contract entered into between Bowe and A. B. Chitwood & Son was approved by the State Highway Department and the respondent, as its engineer in charge, by permitting M. B. Chitwood, the son of the appellant and junior member of the partnership, to perform the contract in question without the slightest change in its terms or conditions; that the houses and structures referred to in the contract were moved by M. B. Chitwood, the junior member of the firm, and the contract price provided for in the agreement between Bowe and A. B. Chitwood & Son was paid to him. The uncontroverted testimony shows that the junior partner, M. B. Chitwood, did the work of removing the houses and structures on the right of way with partnership equipment and that he was paid therefor in accordance with the terms of the contract entered into between Bowe and A. B. Chitwood & Son. The appellant argues that this shows an approval and ratification of the sublet contract between Bowe and A. B. Chitwood & Son. In support of this position, it is earnestly urged by the appellant that no new contract was ever entered into with reference to the work in question; that the house moving was done under the original contract between Bowe and A. B. Chitwood & Son.

If we adopt this view of the testimony advanced by the appellant, we are still unable to see how it can be of any aid or comfort to him.

A partnership under the law is an entity, separate and distinct from the persons who compose it. *Good v. Jarrard,* 93 S. C., 229, 76 S. E., 698, 43 L. R. A. (N. S.), 383; *Bischoff v. Blease,* 20 S. C., 460; *Congdon v. Morgan,* 13 S. C., 190; *Tolar v. Funderburke,* 21 Ga. App., 436, 94 S. E., 592.

So that when a partnership enters into a contract, as was done in this case, such contract is not with the individual members of the firm but with the partnership as an entity distinct from its members. It is a joint contract, and the claim sued on constituted a partnership asset.

Therefore, performance of the contract by one of the partners is a valid performance by the partnership.

The act of a partner within the scope of the partnership business is the act of the co-partnership. Each member in such case becomes the agent of the other. 20 R. C. L., Section 94, page 882.

The testimony of appellant establishes that there was no contract existing between A. B. Chitwood individually and Wm. F. Bowe, Jr., that could have been interfered with by the respondent. If we assume that the contract entered into between A. B. Chitwood & Son and Wm. F. Bowe, Jr., was a valid and existing one, although not consented to by the Chief Highway Commissioner, then it appears that the work contracted to be performed under this contract was actually performed by M. B. Chitwood, the junior member of the firm, for which he received payment. It would seem to follow conclusively that if the contract was fully performed, no cause of action can be maintained for procuring its breach, and if there was no disruption of the contract, no damage was suffered or can be recovered.

Judgment affirmed.

Mr. Chief Justice Stabler, and Messrs. Justices Bonham and Baker concur.

Mr. Justice Carter did not participate on account of illness.