**Shelton BROWN, d/b/a Shelton Brown Insurance Agency, Plaintiff,**

v.

**HARLEYSVILLE MUTUAL INSURANCE COMPANY, Defendant.**

Civ. A. No. 77–2468.

United States District Court,
D. South Carolina,
Columbia Division.

Nov. 29, 1978.

John H. Hydrick, Jr., West Columbia, S. C., for plaintiff.

R. Bruce Shaw, T. F. Sowell, III, Columbia, S. C., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HEMPHILL, District Judge.

Before the court for decision is defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Counsel for both defendant and plaintiff appeared before this court on October 19, 1978, and presented oral argument as to whether the motion should be granted. Having read all pleadings, depositions, answers to interrogatories, and admissions on file, this court determines that defendant's Motion for Summary Judgment should be granted.

Life for this case began in the Court of Common Pleas for Lexington County in September of 1977 after plaintiff filed there an original complaint. Plaintiff alleged that defendant interfered with the contractual and customary business relations which existed between plaintiff and Melvin Gibson. (An insured party who bought one of defendant's policies through plaintiff.) Defendant demurred on the ground that no facts were alleged which would give rise to a cause of action for wrongful interference with a contract because the plaintiff failed to allege any facts which would create a contract between himself and Melvin Gibson. After hearing argument on the demurrer, the State court ruled that the plaintiff had not stated a cause of action for interference with contractual relations but had stated a cause of action for interference with customary business relations. As a result, in December of 1977, the plaintiff filed an amended complaint, in which he stated two causes of action. The first cause of action alleged that defendant by its acts and conduct, commencing about August 20, 1975, interfered with the customary business relationship which existed between plaintiff and Melvin Gibson. The second cause of action alleged that defendant's conduct resulted in an interference with any prospective economic advantage plaintiff might have re-

ceived from future dealings with Melvin Gibson.[1] Also, in December of 1977, shortly after plaintiff filed his amended complaint, defendant sought to have the matter removed to the United States District Court under 28 U.S.C. § 1441(a), and as a result this court assumed jurisdiction.

This controversy arises out of the following facts. Plaintiff entered into an Agency Agreement with defendant on October 29, 1971. On April 23, 1971, Melvin Gibson came to plaintiff for the purpose of buying insurance for his two automobiles. Plaintiff wrote the policies, placing coverage with defendant, Harleysville Mutual Insurance Company. Plaintiff continued to handle the automobile insurance for several years thereafter and in each of those years coverage was continued with Harleysville Mutual Insurance Company. By mutual agreement, the Agency Agreement entered into by the plaintiff and defendant on October 29, 1971, was cancelled to be effective August 1, 1975, at which time a Limited Agency Agreement became effective. Basically this limited agreement stated that plaintiff would have no authority to bind coverage or issue new policies or renew policies as of August 1, 1975. It was understood however that plaintiff would continue to provide normal claim service during the run-off period. Commencing in July of 1975, defendant sent written notices of termination to plaintiff's clients. Most of these notices of termination stated:

> The policy will not be renewed. The Company and your agent have terminated their relationship. For protection after the termination date, please contact your agent.

It is this notice of termination combined with an allegation that defendant placed plaintiff's terminated customer with a competitor agent, on which the charge of interference rests.

In 1938 the Supreme Court held in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) that a federal court in the exercise of its diversity jurisdiction was required to apply the substantive law of the state in which it was sitting. Thus, guided by the rule in *Erie*, this court must turn and look within the body of laws created by the legislature or by the highest court of the State of South Carolina. Upon such a search the court must ascertain whether plaintiff has a cause of action, for if he does, and he has met the requirements for diversity jurisdiction, it is his right under our judicial code to have his matter heard in Federal court.

After reviewing plaintiff's case it is apparent that he is proceeding under one cause of action. Briefly stated, as interpreted from his amended complaint, plaintiff alleges that defendant by its acts and conduct interfered with the customary business relationship which existed between himself and Melvin Gibson. Having isolated the vehicle on which plaintiff seeks to ride, the court must now determine whether South Carolina recognizes such a cause of action.

In March of 1978 the Supreme Court of South Carolina decided the case of *Smith v. Holt, Rinehart and Winston, Inc.*, S.C., 242 S.E.2d 548 (1978) in which Justice Littlejohn writing for the majority took a rather narrow view of what constituted tortious interference. In the court's opinion, Justice Littlejohn states:

> Despite authority, we decline to recognize such a claim by judicial fiat. We think that the limitation of a cause of action for intentional interference, to instances where there is a valid contract in existence, is justified by the fact that the parties have a property right in an existing contract. No such property right can be said to exist in the mere "likelihood of employment." The law affords no protection to rights which are not in existence. If an action for tortious interference with prospective advantage or prospective contractual relations is to become the law in this state, it should be by

---

**1.** Plaintiff subsequently abandoned this cause of action.

legislative enactment. 242 S.E.2d at 549, 550.[2]

After reading the above case and cited language it appears to this court that the South Carolina Supreme Court seeks to limit actions of this type. It has ruled that unless a valid contract is in existence, then no cause of action for intentional interference exist. Looking at the matter before the court now, it is apparent after reading plaintiff's amended complaint, that once again plaintiff has failed to allege a contractual relationship existed between himself and Melvin Gibson. It is significant to point out that the Court of Common Pleas in sustaining defendant's demurrer to the original complaint, found that plaintiff had failed to show any contractual relationship existing between himself and Melvin Gibson.

Having determined that there is no valid contract between the plaintiff and Melvin Gibson and in light of the South Carolina Supreme Court's ruling in *Smith*, supra, that no cause of action for tortious interference exist where there is no valid contract, it appears to this court that the defendant is entitled to judgment as a matter of law.

AND IT IS SO ORDERED.

**2.** The court in reference to authority that such a cause of action does exist regardless of a valid contract, cites: Prosser, *The Law of Torts* § 130 4th ed. (1971); Harper and James, *The Law of Torts* § 6.11 (1956); 45 Am.Jur.2d Interference §§ 50–51; Restatement Second, Torts, Tentative Draft § 766A (1969).